# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REHAN S. HASHMI, an individual, and LYKOR SHACK INC., an Illinois Corporation, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | 19 C 4090 |
| 7-ELEVEN, Inc., a Texas Corporation. ) ) | Judge John Z. Lee |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rehan S. Hashmi and Lykor Shack, Inc. ("Lykor") have sued 7-Eleven Corporation ("7-Eleven") for allegedly violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). 7-Eleven has moved to dismiss the Plaintiffs' amended complaint [32]. For the reasons that follow, that motion is granted.

### Background[1]

This case is about a decades-long relationship that ended badly. Hashmi opened his first 7-Eleven franchise store in 1997. Am. Compl. ¶¶ 1–2, ECF No. 27. Through Lykor, an Illinois corporation of which he is the sole officer, director, and shareholder, Hashmi eventually developed five additional 7-Eleven franchise stores.

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of the Plaintiffs. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

*Id.* ¶ 2. Eager to meet others who shared his passion for 7-Eleven, Hashmi also became an enthusiastic participant in the National Coalition of Associations of 7-Eleven Franchisees ("Franchise Coalition"). *Id.* ¶ 14. Over the years, Hashmi "built his business and life around the 7-Eleven brand." *Id.* ¶ 13.

To understand how Hashmi's relationship with 7-Eleven fell apart, some background is necessary. In February 2010, Hashmi entered into an agreement with 7-Eleven (the "Franchise Agreement") to operate a store in Yorkville, Illinois. *Id.* ¶ 8. In keeping with the Franchise Agreement, Hashmi leased the store, furniture, equipment, and relevant trademarks from 7-Eleven. *Id.* ¶ 7.

Seven years later, the Franchise Coalition appointed Hashmi as its Vice Chairman. *Id.* ¶¶ 13–14. During his tenure, Hashmi started to worry that 7-Eleven had "escalat[ed] control over the day-to-day operation of franchise stores," "prioritize[ed] its relationship with its vendors over its relationship with franchisees," and "maximiz[ed] its corporate profit level in a way that would squeeze store level profit." *Id.* ¶ 17. In time, Hashmi became an outspoken critic of 7-Eleven. *Id.* ¶¶ 16–39.

Soon after Hashmi began to voice his concerns, 7-Eleven announced that it would not renew the lease on his Yorkshire store. *Id.* ¶ 40. Under the Illinois Franchise Disclosure Act ("Franchise Act"), a franchisor must have good cause to terminate a franchisee's lease. *See* 815 Ill. Comp. Stat. Ann. 705/19(a). But 7-Eleven never explained its non-renewal decision. Am. Compl. ¶ 42. To Hashmi, it is obvious

2

that 7-Eleven declined to renew the lease in retaliation for his criticism, violating the Franchise Act in the process. *Id*. ¶¶ 106–07.

From there, Hashmi's relationship with 7-Eleven continued to deteriorate. When 7-Eleven informed Hashmi about the non-renewal, it gave him about a year to transfer to another store. *Id*. ¶ 40. Every time Hashmi picked a store he was interested in, however, 7-Eleven refused to authorize the transfer. *Id*. ¶¶ 44–55. And, when Hashmi asked his contacts at 7-Eleven to suggest some options, they presented him with four underperforming stores. *Id*. ¶¶ 56–58.

Frustrated, Hashmi initiated a lawsuit alleging that the non-renewal of his lease violated the Franchise Act. *See* Compl. ¶¶ 76–79, ECF No. 1. By that time, however, the relevant statute of limitations had expired. Am. Compl. ¶¶ 106–07. As Hashmi sees it, 7-Eleven rejected his transfer requests and proposed unappealing transfer options in a successful effort to prevent him from filing a Franchise Act suit within the limitations period. *Id*. This then led Hashmi to file this lawsuit accusing 7-Eleven of unfair business practices.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). For that reason, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

In its motion, 7-Eleven advances three different grounds for dismissal. The Court's analysis begins—and, in this case, ends—with 7-Eleven's argument that the Plaintiffs cannot sue under the ICFA.[2]

As a threshold matter, the parties dispute whether the Act imposes any limits on who may invoke it. The question of who may sue under the ICFA has a complicated history. By its terms, the Act empowers "[a]ny person who suffers actual damage" to bring suit. *See* 815 Ill. Comp. Stat. Ann. 505/10(a). In the decades following the Act's enactment, however, many courts—including the Seventh

---

[2] Although both parties describe this as a question of standing, "standing is not the issue." *Easton v. Primal Wear, Inc.*, No. 17 C 6081, 2019 WL 1430985, at *8 n.12 (N.D. Ill. Mar. 29, 2019). Rather, the issue is whether the Plaintiffs "failed to state a claim under the ICFA because [they] did not adequately allege that [7-Eleven]'s conduct implicates consumer protection concerns." *Id*. Because the Court concludes that Plaintiffs may not assert their claim under the ICFA, it declines to reach 7-Eleven's other arguments.

4

Circuit—interpreted it to require "a showing of consumer injury." *First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1039 (7th Cir. 1989). Soon after, the Illinois legislature amended the statute to clarify that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." *See* 815 Ill. Comp. Stat. Ann. 505/10a(a); *see also A. Kush & Associates, Ltd. v. American States Ins. Co.*, 927 F.2d 929, 939 (7th Cir. 1991) (tracing these developments).

For the most part, however, courts do not construe the amendment as "eliminat[ing] the requi[red] connection to consumers." *Brody v. Finch Univ. of Health Scis.*, 698 N.E.2d 257, 269 (Ill. App. Ct. 1998). Rather, the "amendment simply clarified that a plaintiff suing under [ICFA] could state a claim based upon a single, isolated injury." *Id.*; *see Athey Prod. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996) ("This amendment was passed to clarify that a plaintiff suing under the Act could state a claim based upon a single, isolated injury, and based solely upon the plaintiff's own injury."). The Court of Appeals has endorsed this narrow reading of the amendment, *see id.* (finding that "claims under the Act must meet the consumer nexus test"); *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999) (requiring that plaintiffs show "how the complained-of conduct implicates consumer protection concerns"), although admittedly not all Illinois courts agree, *see, e.g., Sullivan's Wholesale Drug Co., v. Farly's Pharmacy, Inc.*, 573 N.E.2d 1370, 1376 (Ill. App. Ct. 1991).

Glossing over the Seventh Circuit's decision in *Speaker of Sports*, Hashmi relies on these outlying Illinois appellate court opinions to argue that "any person"

5

may invoke ICFA. *See* Pls.' Resp. Mot. Dismiss ("Pls.' Resp.") at 5–6, ECF No. 38 (citing *Sullivan's*, 573 N.E.2d at 1376). Hashmi also invokes *Scotsman Group, Inc. v. Mid-America Distributors, Inc.*, a district court case that predated *ProServ*. No. 93 C 7320, 1994 WL 118458, *6 (N.D. Ill. Apr. 5, 1994) (refusing to read an "individual consumer injury requirement" into the Act). Whatever the rationale in these decisions, this Court remains bound by the Seventh Circuit's interpretation of the Act, which stands to this day. *See Maxum Indem. Co. v. Eclipse Mfg. Co.*, 848 F. Supp. 2d 871, 881 n.11 (N.D. Ill. 2012).

The upshot is that ICFA only governs "consumer transactions or those having a consumer nexus." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 595 (7th Cir. 2017) (citation omitted). To qualify as a consumer, a plaintiff must "purchase[ ] or contract[ ] for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 650–51 (N.D. Ill. 2015) (citing 815 Ill. Comp. Stat. Ann. 505/1(e)). To show a consumer nexus, a plaintiff must allege conduct "of [a] sufficient magnitude to be likely to affect the market generally." *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004)

Since Hashmi and Lykor disclaim reliance on the consumer nexus test, the only question is whether they count as consumers. *See* Pls.' Resp. at 8. Under the Franchise Agreement, Plaintiffs bought licenses, leases, and services from 7-Eleven. *See* Am. Compl. ¶ 7. Those purchases, Plaintiffs say, make them consumers within the meaning of the Act.

6

Generally, however, "a business purchaser is not a consumer because his only use of the purchased product is as an input into the making of a product that he sells." *Williams*, 366 F.3d at 579. *Lululemon USA, Inc. v. 108 N. State Retail, LLC* illustrates this principle. No. 09 C 1560, 2009 WL 1732103, at *4 (N.D. Ill. June 17, 2009). In *Lululemon*, an apparel company argued that it counted as a consumer because it had purchased retail space. *Id.* at *3. Explaining that "the lease of the space [wa]s a necessary prerequisite for [L]ululemon to engage in the sale of its product," the court held that Luluemon fell outside the Act's definition of a consumer. *Id.*; *see also Gelco Corp. v. Major Chevrolet, Inc.*, No. 01 C 9719, 2002 WL 31427027, at *10 (N.D. Ill. Oct. 10, 2002) (applying similar logic to financing and retail agreements).

Just as in *Lululemon*, here, the leases, licenses, and services that Plaintiffs purchased from 7-Eleven were "necessary prerequisite[s]" for their business. *Lululemon*, 2009 WL 1732103, at *4. So understood, those purchases do not make Plaintiffs consumers within the meaning of the Act.

Equally unavailing is the Plaintiffs' argument that entering the franchise agreement transformed them into consumers. In fact, courts in this circuit consistently have rejected that logic. *See, e.g.*, *Chi. Male Med. Clinic, LLC v. Ultimate Mgmt., Inc.*, No. 12 C 5542, 2012 WL 6755104, at *5 (N.D. Ill. Dec. 28, 2012) ("[T]he Court cannot fathom any way that consulting or franchise services could be used for personal use as the statute requires."); *Shipman v. Case Handyman Servs., L.L.C.*, 446 F. Supp. 2d 812, 814 (N.D. Ill. 2006) (clarifying that franchisees "are not

7

consumers in the sense that courts have come to interpret that term under the statute"); *7-Eleven, Inc. v. Spear*, No. 10 C 6697, 2011 WL 2516579, at *5 n.1 (N.D. Ill. Jun. 23, 2011) (same).

Plaintiffs' attempts to distinguish these cases miss the mark. First, *Chicago Male*'s refusal to treat a franchisee as a consumer depended on that court's conclusion that purchasing "franchise services" does not count as a "personal use." *See* 2012 WL 6755104, at *5. Second, *Shipman*'s citation to *Williams* shows that the court found that franchisees fall outside the Seventh Circuit's definition of a consumer. *See* 446 F. Supp. 2d at 814. Finally, *Spear* invoked the franchises-are-not-consumers principle as an alternative basis for its holding. *See* 2011 WL 2516579, at *5.

In a testament to the weakness of the Plaintiffs' position, they marshal only a single, outdated case to support it. *See Bixby's Food Sys., Inc. v. McKay*, 985 F. Supp. 802, 807 (N.D. Ill. 1997). Relying on the Act's "broad definition[s]", the *Bixby's* court decided that individuals who purchase franchise rights count as consumers. *Id.* In the two decades since *Bixby's*, however, the Seventh Circuit has endorsed a narrower reading of "consumer" that does not cover "business purchasers." *See Williams*, 366 F.3d at 579. Ultimately, because the Plaintiffs have failed to establish that they are consumers, and because they offer no argument as to the consumer nexus test, their ICFA claim fails.

## **Conclusion**

For the reasons set forth above, 7-Eleven's motion to dismiss [32] is granted. To the extent that the Plaintiffs submit that they may sue because they are consumers, they are incorrect. To the extent that the Plaintiffs might be able to sue under the consumer nexus test, they have explicitly waived that argument. Because any amendment would be futile, the Plaintiffs' amended complaint is dismissed with prejudice.

**IT IS SO ORDERED.**  ENTERED: 2/6/20

_____
**JOHN Z. LEE**
**United States District Judge**